**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.I., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.H., MOTHER | |
| | No. 852 EDA 2026 |

Appeal from the Order Entered March 9, 2026
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000407-2024

| | |
|---|---|
| IN THE INTEREST OF: K.K.I., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.H., MOTHER | |
| | No. 853 EDA 2026 |

Appeal from the Decree Entered March 10, 2026
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000030-2026

| | |
|---|---|
| IN THE INTEREST OF: S.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.H., MOTHER | |
| | No. 854 EDA 2026 |

Appeal from the Order Entered March 9, 2026
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000731-2023

| | |
|---|---|
| IN THE INTEREST OF: S.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |

APPEAL OF: S.H., MOTHER

      :
      :
      :
      :
      :
      :
      :
      :  No. 855 EDA 2026

Appeal from the Decree Entered March 10, 2026
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000112-2025

BEFORE:  SULLIVAN, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                                 **FILED JULY 13, 2026**

S.H. ("Mother") appeals from the decisions entered by the Philadelphia County Court of Common Pleas ("trial court") changing the permanency goal from reunification to adoption for, and terminating her parental rights to, her two minor children, K.I. (a/k/a K.K.I.) (born in May 2024) and S.S. (a/k/a S.S.I.) (born in December 2022) (together, "Children").[1]  After careful review, we affirm the trial court's decree terminating Mother's parental rights to K.I. and its goal change decisions as to both Children.  We are constrained, however, to vacate its decree terminating Mother's parental rights to S.S. and remand the matter to the trial court for further proceedings.

The record reflects that the Philadelphia Department of Human Services ("DHS") became involved with Mother and the six children she then had in her

---

[1]  The fathers for Children were unknown; no father was named on either child's birth certificate and Mother did not identify Children's fathers.  ***See*** N.T., 3/9/2026, at 8-9.  The trial court thus terminated the rights of Children's "unknown father."  ***Id.*** at 49.

care in 2018 based upon concerns regarding her housing and mental health, including prior mental health-related hospitalizations. N.T., 3/9/2026, at 12-13; *see also Interest of M.D.*, 336 A.3d 958 (Pa. Super. March 10, 2025) (non-precedential decision). All six children were adjudicated dependent by the trial court, and the court ultimately terminated her parental rights to these children. *See* N.T., 3/9/2026, at 35, 44.

Sharon Robinson ("Robinson"), the Community Umbrella Agency ("CUA") case manager supervisor, had been working with the family for over three years at the time of the hearing underlying the instant matter. She was the only witness to testify. She explained that DHS became aware that Mother was homeless and living unsheltered with her son, S.S., in 2023. *Id.* at 14. DHS obtained an order of protective custody when Mother came for a visit with her other children, and the trial court adjudicated him dependent on September 12, 2023. *Id.* S.S. has resided in the care of the same foster mother, T.J., since his removal more than two years prior to the termination hearing. *Id.* at 11, 21.

K.I. was removed from Mother's care at the time of his birth and adjudicated dependent on May 31, 2024. *Id.* at 15-16. As of the termination hearing, he had been living with S.S. in T.J.'s home for eight months, having moved there after his original foster mother passed away. *Id.* at 11.

Robinson reported that Children do very well in their shared foster home. *Id.* at 25. T.J. meets all their needs for safety, supervision, education,

love, and support. *Id.* at 25-27. This is a preadoptive home for both siblings, they are bonded with T.J., and they look to her as they would their own parent. *Id.* at 26, 29. In response to questioning specifically regarding S.S., Robinson testified that he would not be irreparably harmed by terminating Mother's rights. *Id.* at 31.

Throughout the life of the case, Mother has been ordered to cooperate with CUA; visit her children; obtain a mental health assessment and follow any recommendations; obtain a drug and alcohol evaluation and follow any recommendations; report for random drug screens as requested; and obtain a parenting capacity evaluation and follow any recommendations. *Id.* at 17. According to Robinson, other than regularly attending weekly visits with Children, Mother complied with none of these directives. *Id.* at 34.

DHS had referred Mother to ARC for housing and parenting but she did not engage in the program. *Id.* at 18. Mother was referred to family school but she did not attend. *Id.* She attended only one random urine screen—which was negative—in November 2025, but otherwise failed to comply with any drug and alcohol-related objectives. *Id.* at 34. She has not obtained a mental health evaluation and appears to still be homeless, arriving at visits with Children "with a large suitcase and bags." *Id.*

Mother also refuses to communicate with CUA, and with Robinson in particular. *Id.* at 25, 28. She will only communicate with Robinson through the visitation coach. *Id* at 25. She has never attended a single case plan

meeting. *Id.* at 24. Robinson described Mother's behavior with CUA and other service providers:

Mo[ther] has not complied with CUA. Mo[ther] has not participated in any of the services that we have put forth to assist her to become a better parent, to be able to get stable housing, to be able to get her mental health stable, if there's such a diagnosis, but [Mother] refuses. Mo[ther] refuses everything.

She even cursed out the people that call her to schedule the appointments for services. ARC called her; she cursed them out. The staff from parent capacity evaluation, they called her. Family school called her. It's just she won't comply with anything, and it's almost to the point that I don't know what else that we could possibly do. It's been two years for [S.S.]

*Id.* at 28. Notably, despite being served with notice of the hearing, Mother did not attend. *Id.* at 5-7.

At the conclusion of the hearing, the trial court entered an order changing Children's permanency goals from reunification to adoption and terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). It placed its findings of fact and conclusions of law on the record. *See* N.T., 3/9/2026, at 43-49.

Mother filed timely notices of appeal and concomitantly filed her concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court issued a statement in lieu of an opinion, relying on its findings on the record at the termination hearing in support of its

decision. **See** Trial Court's Notice of Compliance with Rule of Appellate Procedural 1925(a), 5/13/2026, at 1.[2]

Mother raises the following claims for our review:

1. Whether the trial court committed reversible error, when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5) and (8).

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of the children as required by the Adoption Act. 23 Pa.C.S. § 2511(b).

Mother's Brief at 8 (cleaned up).[3]

Our review of a decree involuntarily terminating a parent's rights requires that we engage in a bifurcated process, considering first whether DHS presented clear and convincing evidence that the parent's conduct warranted

---

[2] We note with displeasure that neither of the attorneys representing Children filed a responsive brief in this matter.

[3] Although Mother appealed both the goal change orders and decrees terminating her parental rights to Children, the sole issues she raises on appeal pertain to the termination decision; she raises no claims of error regarding the goal change. **See** Mother's Brief at 7-8. In fact, although Mother filed notices of appeal at both Children's termination and dependency dockets, the sole issues she preserved in her concise statement pertain to the termination decisions. **See** Statement of Errors to be Complained of on Appeal, 3/30/2026, at 1-2. For each of these reasons, she has waived any challenges to the goal change decision. **See In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa. Super. 2017) (issues will not be considered on appeal unless included in the statement of questions involved in the appellant's brief and developed in the argument section, with citations to the record and relevant authority); **see also** Pa.R.A.P. 1925(b)(4)(vii) (issues not raised in the concise statement are waived on appeal).

termination under section 2511(a), and then whether there was clear and convincing evidence that termination best serves the child's developmental, physical, and emotional needs and welfare under subsection (b). *In re Adoption of G.W.*, 342 A.3d 68, 82-83 (Pa. Super. 2025) (en banc) (citations omitted). In reaching our decision we employ the following standard:

> In cases concerning the involuntary termination of parental rights appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the trial court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will.

*Id.* at 83-84 (cleaned up).

We need only agree with one of the eleven possible grounds for termination under subsection (a) to shift our focus to subsection (b). *Id.* at 83; *see also* 23 Pa.C.S. § 2511(a). We therefore begin by reviewing whether the trial court abused its discretion by finding clear and convincing evidence supported termination under section 2511(a)(8). Subsection (a)(8) provides grounds for termination where

> [t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child

continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8).

Mother contends that DHS did not satisfy its burden of establishing the second prong of subsection (a)(8), as "her only true obstacle to reunification is housing." Mother's Brief at 19.[4] According to Mother, "[t]he record clearly shows her commitment to her children by virtue of her consistent visitation and maintaining a drug free status." *Id.*

In support of her argument, Mother relies upon our prior decision in *C.M.E.* for the proposition that "termination of parental rights cannot be ordered if there is a reasonable possibility that the causes and conditions which have led to the separation can be remedied and the family restored." *Id.* at 18 (quoting *In re Interest of C.M.E.*, 448 A.2d 59, 63 (Pa. Super. 1982)). *C.M.E.*, however, involved the termination of parental rights under subsection (a)(2), not (a)(8). *See C.M.E.*, 448 A.2d at 63. Unlike section 2511(a)(8), subsection (a)(2) requires a finding that the "causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied." 23 Pa.C.S. § 2511(a)(2); *see also G.W.*, 342 A.3d at 85 (citing Supreme Court precedent for the proposition that the statutory language of the different

_____

[4] There is no question that the first requirement of subsection (a)(8) is met here; at the time DHS filed its termination petition in February 2026. Children had both been removed from Mother's care for well over twelve months, with S.S. in care for nearly two-and-a-half years and K.I. for over a year-and-a-half. *See* N.T., 3/9/2026, at 14-16.

subsections of 2511(a) "are distinct and cannot be conflated," and cautioning against indiscriminately citing caselaw based upon one subsection in support of another with different requirements).

The law is clear that "termination under subsection (a)(8) does not require evaluating Mother's willingness or ability to remedy the conditions that initially caused placement[.]" *In re J.T.*, 817 A.2d 505, 509 (Pa. Super. 2003). Instead, "the relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009) (citations omitted).

Further, the record does not support Mother's claim that housing was the only concern that remained outstanding at the time of the termination hearing. As the trial court found, and our recitation of the testimony of record confirms, "[t]he objectives for [M]other were mental health treatment, attending the CEU for the purposes of [drug and alcohol] screens[] and a dual diagnosis assessment, a parent capacity evaluation, visitation one time a week, … ARC to include housing and parenting, and family school." N.T., 3/9/2026, at 45. Of those, the only thing she has accomplished "is to visit once a week; and also[,] over the life of this case, got one drug screen that was negative and no other drug screens ever." *Id.* She failed to comply with service providers, including the CUA case manager supervisor. *Id.*

Children came into care because of concerns about Mother's mental health and housing stability. *Id.* at 12. The record clearly reflects that those issues continued to exist at the time of the termination hearing. As such, we find no abuse of discretion in the trial court's finding that DHS met its burden of proof as to the second prong of (a)(8).

The third prong, like section 2511(b), requires that we consider whether termination best serves Children's needs and welfare. *Compare* 23 Pa.C.S. § 2511(a)(8), *with id.* § 2511(b) ("The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.").[5] While the two parts of the statute are distinct, our precedent dictates that we "interpret the two provisions congruently and using the same legal analysis for subsections (a)(8) and (b)." *G.W.*, 342 A.3d at 89 n.20 (citing cases).

> When considering whether termination of parental rights serves a child's needs and welfare, courts must consider the matter from each child's perspective, placing the child's

_____

[5] Although not directly relevant here, we note that subsection (b) further directs:

> The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

"developmental, physical, and emotional needs and welfare above concerns for the parent." *In re K.T.*, 296 A.3d 1085, 1105-06 (Pa. 2025). Our Supreme Court has cautioned that "the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved." *In re T.S.M.*, 71 A.3d 251, 268-69 (Pa. 2013).

When determining whether the petitioner met its burden to prove that termination best serves a child's needs and welfare, the trial court must consider, at a minimum, the factors delineated by our Supreme Court in *K.T.*, all of which are of "'primary' importance in the [s]ection 2511(b) analysis" and "may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare." *K.T.*, 296 A.3d at 1109.

The trial court must determine whether the parent and child share an emotional bond and assess whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.* If a bond exists, the court must ascertain the effect upon the child of severing the bond. *Id.* Because the severing of any parent-child bond may be emotionally painful for a child, the trial court cannot preclude termination based solely on evidence of an "adverse" or "detrimental" impact to the child. *Id.* at 1110-11. Instead, focusing upon the "child's development, and mental and emotional health," the trial court should assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. *Id.*

The parent-child bond, however, is "but one part of the overall subsection (b) analysis." The trial court must also consider:

the child's need for permanency and length of time in foster care consistent with [the Juvenile Act,] 42 Pa.C.S. § 6351(f)(9) and [ASFA], 42 U.S.C. §§ 675(5)(C), (E); whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

- 11 -

*Id.*

When conducting "a full subsection (b) analysis focused upon the child," the trial court has "discretion to place appropriate weight on each factor present in the record." *Id.* at 1113. However, when "weighing the difficult factors discussed above, courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly." *T.S.M.*, 71 A.3d at 269.

*G.W.*, 342 A.3d at 90-91 (cleaned up).

The trial court found that a bond exists between Children and T.J., their longtime foster mother. N.T., 3/9/2026, at 46-47. T.J. meets their needs, Children look to her for safety and support, S.S. calls her mom, and she wishes to adopt Children. *Id.* at 46. The trial court recognized that Children had been in foster care for an extended amount of time—K.I.'s entire life, and all but about ten months of S.S.'s life. *Id.* at 47. It further observed "the ongoing very troubling circumstances" for Mother continued, discussed above, and concluded that Children's needs and welfare were best served by terminating her parental rights and freeing them for adoption.[6] *Id.* at 47.

_____

[6] The trial court further stated that it considered the prior terminations of Mother's parental rights to her six other children, purporting to rely upon caselaw in support off "prognostic evidence being considered." N.T., 3/9/2026, at 48. The trial court points to our non-precedential decision in *K.H.*, wherein we recognized our prior decisions holding "a finding of dependency can be made on the basis of prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent." *Interest of K.H.*, 329 A.3d 623, *4 (Pa. Super. Oct. 16, 2024) (non-precedential decision) (quoting *Interest of L.V.*, 209 A.3d 399,
*(Footnote Continued Next Page)*

The trial court's findings are fully supported by the record. Children are bonded with their foster mother and are doing very well in her care. *Id.* at 25, 26, 29. She has been the only fulltime parent S.S. has known since his removal from Mother's care when he was only ten months old. *Id.* at 21. K.I. has never been in Mother's care, and has lived with his brother in his current foster placement since September 2025. *Id.* at 11, 15-16.

There was no testimony that any bond exists between Children and Mother, and Robinson testified that, as to S.S., he would not be irreparably harmed by terminating Mother's rights. *Id.* at 31. As we have previously held, "where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists," dependent on the facts and circumstances of each case. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). The record in the case at bar reflects that the extent of Children's contact with Mother was a supervised visit that occurred once per week. N.T., 3/9/2026, at 34. As stated repeatedly, K.I. has never lived with Mother and S.S. spent only ten months of his more than three years in her care. We therefore conclude that it is reasonable to infer here that no meaningful

_____

416 (Pa. Super. 2019)). We have found no case in this Commonwealth, however, that permits a termination decision to be based upon prior terminations of that parent's rights to other of his or her children, nor does section 2511(a) of the Adoption Act, which enumerates the grounds for termination, contain any such provision. Nonetheless, as the trial court's findings are otherwise supported by the record and the applicable law, and Mother does not raise any contention that this was error, we need not address it further.

parent-child bond exists between Mother and Children such that terminating her parental rights would irreparably harm either child.

Based on the foregoing, we find no abuse of discretion in the trial court's consideration of the third prong of subsection (a)(8) as well as subsection (b). The record supports its determination that Children's needs and welfare are best met by terminating Mother's parental rights.

Although the trial court's termination decisions find both record and legal support, we are unable to affirm its decision as to S.S. Our review of the record shows that each child was represented by his dependency guardian ad litem ("GAL") at the termination hearing. *See id.* at 4. The law is clear that children who are the subject of proceedings to involuntarily terminate their parents' rights have a "statutory right to legal counsel," and this Court is tasked with conducting a "limited sua sponte review" to ensure this occurred. *In re Adoption of K.M.G.*, 240 A.3d 1218, 1238 (Pa. 2020) (citing 23 Pa.C.S. § 2313(a)); *see also In re Adoption of L.B.M.*, 161 A.3d 172, 183 (Pa. 2017) (holding "the failure to appoint counsel for a child involved in a contested, involuntary termination of parental rights proceeding is a structural error and is not subject to harmless error analysis"). Where the child's dependency GAL is appointed to fulfill that role, our Supreme Court requires the trial court to first ensure that no conflict exists between the child's best interest (represented by the GAL) and the child's preferred outcome,

commonly referred to as the child's legal interests (represented by counsel). *Id.* at 1236.

The certified record on appeal of the termination decrees contains no order appointing legal counsel to represent either child or a finding by the trial court that no conflict existed between Children's best and legal interests; in fact, there is no mention of Children's right to legal counsel in the record at all. *See K.M.G.*, 240 A.3d at 1236 (emphasizing that this Court's sua sponte review is solely for "binary, record-based determinations" of "(1) whether the orphans' court appointed counsel to represent the legal interests of the children and (2) if the appointed counsel also serves as GAL, whether the orphans' court determined that the child's best interests and legal interests did not conflict"). We recognize that for children who are "pre-verbal" and too young to form "a subjective, articulable preference to be advanced by counsel during the termination proceedings, … [a]s a matter of sound logic, there can be no conflict between an attorney's duty to advance a subjective preference on the child's part … and an attorney's concurrent obligation to advocate for the child's best interests[.]" *In re T.S.*, 192 A.3d 1080, 1089-90 (Pa. 2018). The record supports the applicability of this presumption as to K.I., as he was only a year and ten months at the time of the termination hearing, and Robinson testified that he has "a little bit of trouble with speech," rendering him unable to even articulate a name for his foster mother. N.T., 3/9/2026, at 26.

- 15 -

This was not the case for S.S., who, according to Robinson, referred to T.J. as "mom." *Id.* Although S.S. was only a little older than three at the time of the termination hearing, there was no indication in the record—from the trial court, Robinson, or S.S.'s GAL—that he could not articulate a preference regarding the termination of Mother's parental rights. This Court recently held, in a precedential decision, that remand was required for a hearing to determine whether the GAL could represent a three-and-a-half-year-old child without conflict. *See Interest of R.D.*, ___ A.3d ___, 2026 WL 1757004, *6 (Pa. Super. 2026) ("The record does not support a conclusion that Child was incapable of expressing her preferences, nor that efforts were made to ascertain Child's desired outcome. Where a child has some ability to articulate a preferred outcome, counsel for the child must make 'efforts to discern the child's desires.'"). We further note that in *T.S.*, the parties expressly agreed that the young children (aged two and three) were unable to express a preference regarding termination. *See T.S.*, 192 A.3d at 1089. That also did not occur here for S.S.

We are therefore constrained to vacate the trial court's decree terminating Mother's parental rights as to S.S. We remand the matter for further proceedings in compliance with *K.M.G.* and *T.S.* Upon receipt of the record from this Court, if the trial court finds that S.S. was properly represented by his dependency GAL at the termination hearing because he was unable to articulate a preference regarding termination and/or that no

conflict existed between S.S.'s best and legal interests, this decision is without prejudice to the trial court's authority to reissue the termination decree. If the trial court determines a conflict existed between S.S.'s best and legal interests, it shall immediately appoint separate legal counsel to represent him pursuant to 23 Pa.C.S. § 2313(a) and schedule a new hearing as to S.S. only pursuant to 23 Pa.C.S. § 2511 forthwith. We affirm the trial court's decree terminating Mother's parental rights to K.I.

Orders changing Children's permanency goals from reunification to adoption affirmed. Decree terminating Mother's parental rights to K.I. affirmed. Decree terminating Mother's parental rights to S.S. vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/13/2026